**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**SHIRLEY GOBER,**

      **Plaintiff,**

**vs.**                                   **Case No. 1:09cv123-MP/WCS**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

      This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

      Plaintiff, Shirley Gober, applied for supplemental security income benefits. Plaintiff alleges disability due to coronary artery disease, chronic obstructive pulmonary disease, hypertension, and obesity, with onset on September 1, 2003. Plaintiff was 61 years old at the time of the second administrative hearing (on July 30, 2008), has a 9th

grade education, and has past relevant work as a restaurant manager.  R. 390-391.

The Administrative Law Judge found that Plaintiff has the residual functional capacity to

do light work with some limitations, can still do her past relevant work as that job is

usually performed in the national economy, and thus is not disabled.  R. 20-24.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by

substantial evidence in the record and premised upon correct legal principles.  Chester

v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a

scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable

person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler,

703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d

1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if

supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir.

2002).  "If the Commissioner's decision is supported by substantial evidence we must

affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232,

1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial

deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211

(11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to

uphold the Secretary's decision by referring only to those parts of the record which

support the ALJ.  A reviewing court must view the entire record and take account of

evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber

v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed

all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

1.   Is the individual currently engaged in substantial gainful activity?

2.   Does the individual have any severe impairments?

3.   Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.   Does the individual have any impairments which prevent past relevant work?

5.   Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of

the application for benefits.  A positive finding at step three results in approval of the

application for benefits.  At step four, the claimant bears the burden of establishing a

severe impairment that precludes the performance of past relevant work.  If the claimant

carries this burden, the burden shifts to the Commissioner at step five to establish that

despite the claimant's impairments, the claimant is able to perform other work in the

national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050,

1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove

that he or she cannot perform the work suggested by the Commissioner.  Hale v.

Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Medical evidence**

Plaintiff had cardiac bypass surgery on February 6, 2004.  R. 159-160.

On March 2, 2004, Plaintiff reported that the bronchodilators that had been

prescribed had improved her respiratory status and her tolerance for exercise had also

improved.  R. 121.  She was discharged from treatment, with return as needed.  *Id.*

 On April 29, 2004, Dr. Tonner noted that Plaintiff had stopped smoking.  R. 144.

While her lungs had reduced air flow, there were no wheezes, rales, or rhonchi.  *Id.*  Her

oxygen saturation was 96% on room air.  *Id.*  She was to return in six months.

On May 13, 2004, Dr. Roark reported that Plaintiff "looks quite good at this point."

R. 120.  He said she had recovered, and was gradually increasing her activity.  *Id.*  He

found that she had "no cardiac symptoms" and had stopped smoking.  *Id.*  Plaintiff was

to "work on exercise and continued weight reduction."  *Id.*

Plaintiff was again seen by Dr. Tonner on October 18, 2004.  R. 189.  He thought that her symptoms suggested sleep disordered breathing.  *Id.*  He found that she had "only mild extrinsic restriction related to her obesity and also moderate small airways disease related to her prior smoking."  *Id.*  The sleep study revealed nocturnal hypoxia with a low oxygen saturation level of 78%.  R. 188.  This was deemed to be an abnormal nighttime oxygen level.  R. 187.

Plaintiff did not see Dr. Tonner again until June 12, 2006.  R. 222.  She was smoking again and had a cough.  *Id.*  As noted ahead, she stopped smoking again in July, 2006.  Her weight was 279 pounds.  *Id.*  She is 5 feet 5 inches tall.  R. 235.  Her air flow was fair, with no wheezes, rales, or rhonchi.  R. 222.  Her oxygen saturation was 93% on room air.  *Id.*  Dr. Tonner's impression was mild extrinsic restriction, smoking and bronchitis, hypertension, probable sleep disorder breathing, and coronary artery disease with bypass.  *Id.*  He recommended that she stop smoking and lose weight.  *Id.*

On July 6, 2006, Plaintiff had a complete pulmonary function test.  R. 218.  Her forced vital capacity and the FEV1 were both mildly reduced.  R. 218.  Her FEV1 percent of forced vital capacity was normal.  *Id.*  Room air oxygen saturation was 93%. *Id.*  The impression from the testing was mild restriction probably extrinsic and related to Plaintiff's body habitus (obesity), and mild hypoxia.  *Id.*

On July 13, 2006, Plaintiff was evaluated for headaches, and cervical and lumbar pain following a motor vehicle accident.  R. 233-236.

On August 14, 2006, Dr. Tonner filled out a form indicating his opinion as to Plaintiff's residual functional capacity.  R. 283-285.  He said that Plaintiff could

frequently lift less than 10 pounds, occasionally lift 10 pounds, sit, stand, or walk for less than 2 hours daily, and sit for 6 hours daily. R. 283. He said that Plaintiff does not need to alternate between sitting and standing. R. 284. He said that she could never climb, stoop, kneel, crouch, crawl, or push and pull with leg or arm controls. *Id.* He said that Plaintiff's impairments restricted her activities with heights, moving machinery, temperature extremes, chemicals, and dust. *Id.* He stated that his opinion covered the period from June 12, 2006, through August 14, 2006. R. 285.

On August 15, 2006, Dr. Mott filled out the same form. R. 237-239. Dr. Mott thought that Plaintiff could only occasionally (and frequently) lift and carry less than 10 pounds, stand and walk for less than 2 hours, and sit for only 1 hour a day. R. 237. He said that Plaintiff could never kneel, crouch, or crawl, and could not work with heights, temperature extremes, chemicals, or dust. R. 238. He said that his assessment covered December 10, 2001, through August 15, 2006. R. 239.

On February 2, 2007, Plaintiff was seen by Dr. Mott for renewal of medications. R. 353. His assessment was hyperlipidemia,[1] urinary incontinence, and hypertension. R. 354.

On January 9, 2008, Plaintiff was seen by Dr. Mott for refill of medications. R. 351. Her oxygen saturation was 96%. *Id.* His assessment was COPD, hyperlipidemia, hypertension, and coronary artery disease. R. 352.

---

[1] Hyperlipidemia is a general term for elevated concentrations of any or all of the lipids in the plasma, such as hypertriglyceridemia, hypercholesterolemia, and so on. DORLAND'S MEDICAL DICTIONARY FOR HEALTHCARE CONSUMERS, available at: http://www.mercksource.com (Medical Dictionary link).

On March 24, 2008, Plaintiff was again seen by Dr. Tonner.  R. 355.  She had

lost 26 pounds, and her weight was 248 pounds.  *Id.*  He reported that she had quit

smoking again in July, 2006.  *Id.*  Her oxygen saturation with room air was 96%.  *Id.*  Dr.

Tonner found "mild extrinsic restriction," chronic dyspnea and obesity, and suspected

asthmatic bronchitis.  *Id.*  She was to follow-up with Dr. Tonner in one year.  *Id.*

On August 12, 2008, Plaintiff was seen again by Dr. Mott for a refill of medication

for back pain and said that she was unable to stand.  R. 356.  Dr. Mott said that Plaintiff

was disabled due to coronary artery disease, COPD, and chronic back pain.  *Id.*

Plaintiff reported that she continued to have chest pain and shortness of breath, and

was unable to stand on her feet for any extended period.  *Id.*  On examination, Dr. Mott

found that Plaintiff had decreased range of motion in her neck without pain.  *Id.*  Her

breath sounds were equal bilaterally.  *Id.*  He observed decreased range of motion of

the back with lumbar muscle spasms.  R. 357.  He found "significant degenerative

changes of the knee joints with decreased range of motion of all extremities with

peripheral edema bilaterally."  *Id.*

**Legal analysis**

**Failure to discuss SSR 02-1p**

Plaintiff asserts that the ALJ erred by failing to mention Social Security Ruling 02-

1p concerning evaluation of obesity.  Listing 9.09 (Obesity) was deleted on October 25,

1999.  64 Fed. Reg. 46122 (1999), cited in SSR 02-01p.  Obesity still, however, may be

a medically determinable impairment that should be considered in making a

determination of disability at all steps, and this is reflected in changes to a number of

other Listings. SSR 02-01p. Social Security Ruling 02-01p provides guidance as to how to evaluate obesity. *Id.* Obesity may "meet" the requirements of a listed impairment if there is another impairment that, in combination with obesity, meets the requirements of a listing, or if a combination of impairments, including obesity, is equal to a listed impairment. *Id.*, ¶ 7. This may occur if obesity increases the severity of related impairments so that the combination meets a listing. *Id.*, ¶ 7.

> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

*Id.*, ¶ 8.

The Administrative Law Judge did not mention SSR 02-1p. She did, however, find at step 2 that Plaintiff has the "severe" impairment of obesity. R. 19. She noted that on March 24, 2008, Plaintiff had a voluntary weight loss of 26 pounds and her weight was 248 pounds. R. 20. She thoroughly discussed the medical evidence, including any potential medical findings of impairments arising from obesity. R. 21-23. She determined that Plaintiff's obesity, whether considered alone or in combination with other impairments, does not met or equal a listed impairment. R. 20.

Plaintiff has not pointed to any specific evidence to show that the ALJ should have found that her impairments, when considered in combination with obesity, meet or equal a listed impairment. Therefore, Plaintiff has not shown that her application would have been granted had the ALJ mentioned and discussed SSR 02-1p. Hence, this alleged error is not persuasive.

**Failure to give weight to the testimony of the vocational expert**

Plaintiff argues that the ALJ erred "by rejecting the VE's testimony that Plaintiff GOBER is not capable of work."  Doc. 14.  The vocational expert does not express an opinion as to whether a claimant can work.  The vocational expert presents evidence as to the functional requirements of jobs and then expresses an opinion as to whether a hypothetical individual, with hypothetical limitations, can do those jobs.  The ALJ decides whether the claimant's limitations fit the hypothetical, not the vocational expert.  As phrased in the memorandum, the argument is not persuasive.

The ALJ presented a hypothetical to the vocational expert containing the work limitations she found for Plaintiff in her decision, that is, an ability to do light work with some limitations.  R. 404.  The vocational expert said that Plaintiff could do her past relevant work as a restaurant manager or food services manager as that job exists in the national economy, but could not do the job as Plaintiff described it.  R. 405.  In other words, there was a job that exists in the national economy (restaurant manager) that Plaintiff can do.  This finding was sufficient at step 5 to find that she was not disabled, assuming that the ALJ's finding as to Plaintiff's residual functional capacity was correct.  This alleged error is not persuasive.

### Whether the ALJ failed to give substantial weight to the opinions of treating physicians

Plaintiff contends that the ALJ failed to give substantial weight to the opinions of Plaintiff's treating physicians.  The opinion of a claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  This is so because treating physicians:

are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). Important to the determination of whether there is a "detailed, longitudinal picture" of impairments is the length of the treatment relationship, the frequency of examination, the extent of the knowledge of the treating source as shown by the extent of examinations and testing, the evidence and explanation presented by the treating source to support his or her opinion, the consistency of the opinion with the record as a whole, and whether the treating source is a specialist with respect to the particular medical issues. 20 C.F.R. § 404.1527(d)(2)-(5).

The reasons for giving little weight to the opinion of a treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004). "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). "Where the Secretary has ignored *or* failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." *Id.* (emphasis added); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1217 (11th Cir. 1991); Critchfield v. Astrue, 2009 WL 635698 (N.D. Fla. Mar 10, 2009) (No. 308cv32-RV/MD). *Compare*, Harris v. Astrue, 546 F.Supp.2d 1267 (N.D. Fla. 2008) (No. 5:07cv44-RS/EMT) (remanding because the ALJ gave improper reasons to discount the opinion of a treating physician, but did not

ignore it).[2] *But see,* <u>Cole v. Barnhart</u>, 436 F.Supp.2d 1239 (N.D. Ala. 2006) (finding that

the opinions of the treating physician must be accepted as true where the ALJ "did not

properly refute them.").

This circuit finds good cause to afford less weight to the opinion of a treating

physician "when the: (1) treating physician's opinion is not bolstered by the evidence; (2)

evidence supported a contrary finding; or (3) treating physician's opinion was conclusory

or inconsistent with the doctor's own medical records." <u>Phillips v. Barnhart</u>, 357 F.3d

1232, 1240-1241(11th Cir. 2004); <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583 (11th Cir.

1991) ("The treating physician's report may be discounted when it is not accompanied

by objective medical evidence or is wholly conclusory."). *See also*, <u>Crawford v.

Commissioner Of Social Security</u>, 363 F.3d 1155, 1159 (11th Cir. 2004) (finding good

reasons articulated by the ALJ to discount the treating physician's opinion).

The Administrative Law Judge made the following findings regarding the opinions

of treating physicians:

> As for the opinion evidence, again the undersigned has considered Dr.
> Mott's medical source statement contained in Exhibit 9F and discounted
> [it] as it is not supported by the weight of the evidence of other medical
> source opinions. Dr. Mott based his restrictions on the claimant's
> diagnoses of COPD and coronary artery disease. However, since she
> underwent cardiac bypass surgery, the claimant's physical condition had
> improved. She reported increased exercise tolerance. Although she has
> some pulmonary deficits, the medical records show the claimant's
> condition is not disabling. Pulmonary function test results revealed only
> mild extrinsic restriction related to her obesity and moderate small airway
> disease related to her smoking. There was no change after the
> bronchodilator (Exhibit 6F). Furthermore, updated records from Dr. Mott
> revealed the claimant was seen on a yearly basis. She was seen on

---

[2] <u>Harris</u> distinguished <u>MacGregor</u> as a case where the ALJ made no finding as to the
weight of the opinion of the ALJ, *i.e.*, he *ignored* the opinion. 786 F.Supp.4d at 1282.

February 2, 2007[,] and January 9, 2008, which seems indicative of non-
disabling impairments.

R. 23.

The ALJ gave the following reasons for discounting Dr. Tonner's assessment:

The undersigned has considered Dr. Tonner's physical assessment dated
August 14, 2006, and it is also discounted as it is not supported by the
pulmonary function test ordered by him.  In addition, the claimant was
seen by him on March 24, 2008, and he recommended a follow up in one
year and she was mainly seen for medication refills (Exhibit 13F).

R. 23.

Plaintiff argues that the ALJ erred because she "seemed to second guess the

treating doctors' opinions by commenting on treatment methods and and [sic] how

Plaintiff GOBER's mental [sic, medical] condition improved."  Doc. 14, p. 10.  The ALJ

did not second guess treatment methods.  She reasoned that the restrictions

determined by Dr. Mott were based upon Plaintiff's COPD and coronary artery disease,

but observed that since Plaintiff's cardiac bypass surgery, her physical condition had

improved.  R. 23.  She noted that Plaintiff had increased tolerance for exercise, had only

mild extrinsic restriction related to obesity, and was seen by Dr. Mott only once a year.

She reasoned that the assessment of Dr. Tonner was contradicted by the pulmonary

function test he had ordered, and apparently found no reason to continue treatment

since he scheduled the next appointment for a year later.

These findings are supported by substantial evidence in the record, all of which

the ALJ noted and discussed above.  It is appropriate for the ALJ to examine the

medical record for objective evidence to support the opinion of a treating physician.  Of

primary importance is evidence of the frequency of treatment contact with the physician

and results. Evidence of improvements after treatment may be substantial evidence in the record to discount a treating physician's opinion. *See*, <u>Crawford</u>, *supra*, 353 F.3d at 1159 (evidence that the claimant's condition had improved after treatment was substantial evidence to discount the treating physician's opinion).[3] Infrequent treatment may be evidence that the physician did not have a significant treating relationship with the claimant.

Drs. Mott and Tonner did not treat Plaintiff frequently, over a continuous period without long breaks, and therefore their treatment relationships with Plaintiff were not especially strong. Plaintiff saw those physicians primarily for medication refills. Further, even on those occasions that the physicians saw Plaintiff, her oxygen levels were repeatedly within normal ranges and her breathing restrictions were mild. The reasons given by the ALJ to discount the opinions of Drs. Mott and Tonner correctly followed the law and are supported by substantial evidence in the record.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge were based upon substantial evidence in the record and correctly followed the law. The

---

[3] The ALJ may not impose his own medical judgment as to the "conservative" nature of treatments as a reason, standing alone, to disregard an opinion of a treating physician. <u>Burgess v. Astrue</u>, 537 F.3d 117, 129 (2nd Cir. 2008). It is, however, appropriate to discount a treating physician's opinion if conservative treatment has resulted in improvements. <u>Peters v. Astrue</u>, 232 Fed.Appx. 866, 871 (11th Cir. Apr 16, 2007) (not selected for publication in the Federal Reporter, No. 06-15958).

decision of the Commissioner to deny Plaintiff's application for benefits should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on January 28, 2010.

s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.